NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2006-3220

JOE A. BROWN, JR.,

Petitioner,

v.

MERIT SYSTEMS PROTECTION BOARD,

Respondent,

and

UNITED STATES POSTAL SERVICE,

Intervenor.


Joe A. Brown, Jr., of Lewisville, Texas, pro se.

Calvin M. Morrow, Attorney, Office of General Counsel, United States Merit Systems Protection Board, of Washington, DC, for respondent. With him on the brief were Rosa Koppel, Acting General Counsel and Thomas Auble, Acting Associate General Counsel. Of counsel was Joyce G. Friedman, Acting Associate General Counsel.

Ray E. Donahue, Attorney, Law Department Civil Practice, United States Postal Service, of Washington, DC, for Intervenor. With him on the brief was Lori J. Dym, Chief Counsel. Also on the brief was Peter D. Keisler, Assistant Attorney General, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC. Of counsel was Reginald T. Blades, Attorney.

Appealed from: United States Merit Systems Protection Board

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2006-3220

JOE A. BROWN, JR.,

Petitioner,

v.

MERIT SYSTEMS PROTECTION BOARD,

Respondent,

and

UNITED STATES POSTAL SERVICE,

Intervenor.

_____

DECIDED: January 22, 2007

_____

Before NEWMAN, SCHALL, and BRYSON, <u>Circuit Judges</u>.

PER CURIAM.

## DECISION

Joe A. Brown, Jr. petitions for review of the final decision of the Merit Systems

Protection Board ("Board") that dismissed for lack of jurisdiction his appeal of an alleged

constructive suspension. <u>Brown v. U.S. Postal Serv.</u>, No. DA-0752-05-0591-I-1 (M.S.P.B. March 28, 2006) ("<u>Final Decision</u>"). We <u>affirm</u>.

## DISCUSSION

### I.

Mr. Brown, who is a letter carrier with the Postal Service ("agency") at its Ridglea Station in Forth Worth, Texas, was injured on the job in the fall of 2004. On April 1, 2005, the Office of Workers' Compensation Programs of the Department of Labor ("OWCP") approved Mr. Brown's claim for workers' compensation benefits based upon "Aggravation of bilateral anomalies of foot, NEC, 755.67A; bilateral arthropathy of the foot, 716.97B." OWCP informed the agency that, if it had a modified job available that was consistent with Mr. Brown's work restrictions, it should offer the job to him and should submit the job's duties to OWCP for approval.

Mr. Brown refused a job offer that the agency made to him on April 11, 2005. Thereafter, on May 11, 2005, the agency made Mr. Brown another job offer. This offer was for a modified processing clerk position at another postal station in Forth Worth. The position did not require walking or standing, as had the position the agency offered Mr. Brown on April 11. The notice accompanying the offer informed Mr. Brown that he had 30 days to accept the offer and report for work or to arrange for a report date, and that, if he refused the offer, he needed to provide a written explanation for the reasons. The same day that the agency offered Mr. Brown the modified processing clerk position, OWCP wrote a letter to Mr. Brown in which it stated that it had determined that the position in the job offer complied with his medical restrictions. Mr. Brown responded to the agency's offer on June 8, 2005. In his response, Mr. Brown stated that he was

neither declining nor accepting the offer, but that his duty status report suggested that he should decline. Mr. Brown added that he had a doctor's appointment on June 17, after which he would provide further medical documentation.

On June 13, 2005, OWCP sent Mr. Brown a letter advising him that it considered his response of June 8 to be a refusal of the agency's offer of the modified clerk position. OWCP rejected Mr. Brown's reasons for not accepting the offer and reiterated that the position met his medical restrictions. OWCP informed Mr. Brown that, if he did not accept the offer within 15 days, his worker's compensation benefits would be terminated. Thereafter, on June 29, 2005, Mr. Brown's benefits were terminated after he still had not accepted the modified clerk position. OWCP's letter stated: "[Y]our entitlement to wage loss and schedule award benefits are terminated because you failed to accept suitable employment."

II.

On August 10, 2005, Mr. Brown lodged an appeal with the Board, alleging that he had been constructively suspended from his position. Although Mr. Brown did not state what period of absence he alleged amounted to a constructive suspension, he contended that the jobs the agency offered him were not suitable in view of his medical condition.

On December 20, 2005, without holding a hearing, the administrative judge ("AJ") to whom the appeal was assigned issued an initial decision in which he dismissed the appeal for lack of jurisdiction. Brown v. U.S. Postal Serv., No. DA-0752-05-0591-I-1 (M.S.P.B. Dec. 20, 2005) ("Initial Decision"). The AJ pointed out that there were two situations in which the Board had jurisdiction under 5 U.S.C. §§ 7511-13 to consider a

constructive suspension claim. The first situation, the AJ explained, is when an agency places an employee on enforced leave pending an inquiry into his ability to perform, the issue being whether the agency or the employee initiated the absences lasting over fourteen days. Initial Decision at 6 (citing Johnson v. U.S. Postal Serv., 85 M.S.P.R. 184, ¶ 5 (2000); McIver v. U.S. Postal Serv., 74 M.S.P.R. 464, 467 (1997)). The second situation is when an employee who is absent from work for medical reasons requests to return to work with altered duties, but the agency denies that request, even though it is obligated to offer the employee available light-duty work. In such a situation, the employee's continued absence may be viewed a constructive suspension. Initial Decision at 6-7 (citing Baker v. U.S. Postal Serv., 71 M.S.P.R. 680, 692 (1996)).

Considering the facts set forth in Part I above, Initial Decision at 1-4, 6-7, the AJ rejected Mr. Brown's argument that his case involved the latter situation. The AJ pointed out that the agency had offered Mr. Brown a position with duties that were modified to take into account the medical condition for which OWCP had approved compensation benefits. In addition, the AJ noted that OWCP had found the position offered to Mr. Brown suitable. He also noted that the Board did not have authority to review OWCP's suitability determination because it was reviewable only by the Department of Labor. Initial Decision at 7 (citing New v. Dep't of Veterans Affairs, 142 F.3d 1259, 1262 (Fed. Cir. 1998)). Thus, the AJ ruled that the Board lacked jurisdiction because Mr. Brown's absences from work subsequent to the agency's May 11, 2005, offer of a suitable position were not the result of a refusal by the agency to allow Mr. Brown to work. Initial Decision at 7. Finally, turning to Mr. Brown's contention that he had been "placed off the clock at times," the AJ noted that Mr. Brown had not offered

any "evidence or factual allegations regarding any period of absence that was initiated by the agency that was in excess of fourteen consecutive days." Id. at 8.

The Initial Decision became the final decision of the Board on March 28, 2006, when the Board denied Mr. Brown's petition for review for failure to meet the criteria for review set for the at 5 C.F.R. § 1201.115(d). This appeal followed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

III.

Our scope of review in an appeal from a decision of the Board is limited. Specifically, we must affirm the Board's decision unless we find it to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; obtained without procedures required by law, rule or regulation having been followed; or unsupported by substantial evidence. 5 U.S.C. § 7703(c); Kewley v. Dep't of Health & Human Servs., 153 F.3d 1357, 1361 (Fed. Cir. 1998).

On appeal, Mr. Brown does not address the jurisdictional ruling of the Board in his case. Rather, he contends that, in ruling against him, the AJ "overlooked what D.O.L. did[,] . . . knowing that pertinent documents were forthcoming." Mr. Brown adds that his doctor wrote a note confirming this. Mr. Brown also contends that there was "clear evidence" that he was not able to return to work because Lionel Cantu, the manager of the Ridglea Station, hated him, and all relevant paperwork had to be submitted to Mr. Cantu.

We see no error in the Board's decision in this case. The AJ dismissed Mr. Brown's appeal for lack of jurisdiction without a hearing after he determined that Mr. Brown had failed to present non-frivolous allegations as to material facts pertinent to the

issue of the Board's jurisdiction. <u>Initial Decision</u> at 9, n.7. This was the correct approach as a matter of law, <u>see</u> <u>Garcia v. United States</u>, 437 F.3d 1322, 1344 (Fed. Cir. 2006) (en banc), and the AJ applied the correct legal test for determining whether the Board had jurisdiction, <u>see</u> <u>New</u>, 142 F.3d at 1262 (determination of whether a position is suitable for an employee in light of the employee's medical condition is committed to OWCP). At the same time, Mr. Brown has failed to demonstrate that the AJ's factual determinations underlying his ruling are not supported by substantial evidence. Put another way, Mr. Brown has failed to show that the facts set forth in Part I above, which are determinative of the jurisdictional issue, are not supported by substantial evidence. Indeed, the AJ determined that these facts were not disputed, <u>Initial Decision</u> at 1-2, and Mr. Brown has not challenged that determination. Finally, to the extent that Mr. Brown challenges the determination that he was offered a position that was suitable in light of his medical condition and asserts that his supervisor was hostile to him, he presents allegations that were beyond the jurisdiction of the Board.

For the foregoing reasons, the final decision of the Board dismissing Mr. Brown's appeal for lack of jurisdiction is affirmed.